Keith P. AYERS, Petitioner,

v.

Dr. P. J. CICCONE, Director, United States Medical Center for Federal Prisoners, Springfield, Missouri, Defendant.

Civ. A. Nos. 17160–3, 17172–3.

United States District Court
W. D. Missouri, W. D.

June 23, 1969.

Keith P. Ayers, pro se.

Frederick O. Griffin, Jr., Asst. U. S. Atty., Kansas City, Mo., for defendant.

BECKER, Chief Judge.

### MEMORANDUM, FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT

Petitioner, a convict confined in the United States Medical Center for Federal Prisoners, filed separate petitions for habeas corpus on November 22, 1968, and December 2, 1968, complaining of having suffered 19 days in solitary confinement, the loss of 93 days statutory good time, and other punishments for his activities in rendering legal assistance without charge to other inmates of the Medical Center. After the issuance of show cause orders, and the filing of responses and traverses, the cases were consolidated for the purpose of a hearing and a plenary evidentiary hearing on the issues joined by the said order and pleadings was held at the United States Courthouse in Springfield, Missouri, on December 18, 1968. The matter was then taken under advisement and decision was stayed, pending the ruling of the United States Supreme Court in Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (decided February 24, 1969). Thereafter on the basis of the evidentiary hearing, an interlocutory order was entered. In this order the following findings and relief were included. It was found that the preliminary legal assistance program at the Medical Center had been inadequate from the time of the filing of petitioner's original habeas corpus petition until the date of hearing. The writ of habeas corpus was granted. The respondent was directed to restore petitioner's good time and to cease and desist from incompleted punishments of petitioner, and to show cause on or before March 28, 1969, why respondent should not be enjoined from enforcing the regulation, under which petitioner had been punished, forbidding inmate legal assistance.

At the hearing held on December 18, 1968, the Court, applying all applicable rules of evidence and burden of proof rules found the following facts:

Petitioner, upon his plea of guilty to a charge of interstate transportation of a stolen vehicle (Section 2313, Title 18, U.S.C), was sentenced in the United States District Court for the Western District of Kentucky to a term of 3 years' imprisonment. Subsequently he filed a motion under Section 2255, Title 28,

U.S.C., in the sentencing court which was denied. An appeal from the denial was, at the time of the hearing herein, still pending before the Court of Appeals. While a convict confined in the United States Medical Center for Federal Prisoners, petitioner, frequently aided other inmates in the preparation of applications, petitions and motions and in other legal matters. These activities resulted in his punishment under a regulation of respondent, designated H–200.1, which prohibited the rendering of legal aid by one inmate to another. Petitioner also was placed in solitary confinement or "maximum control" from November 13, 1968, to December 2, 1968, for "security reasons," as respondent claimed, because of his suspected complicity in the setting of a fire in a fellow inmate's (Harry H. Mayo's) room, which, as respondent stated, possibly resulted from that inmate's refusal to permit a civil complaint to be filed by petitioner in Mayo's name. Petitioner was further denied permission by Social Worker Minchen to use a typewriter for the purpose of typing a brief to be filed in the Sixth Circuit Court of Appeals. But this denial was in accordance with a reasonable and valid regulation of respondent which provided for such typing only where it was demonstrable that a court would accept only a typewritten form.[1] Petitioner, at the time of the hearing herein, was receiving adequate medical treatment, though he had alleged previously not to have received proper medical treatment from respondent.[2]

Earl C. Hunter, a convict confined in the Medical Center who had no hands, but instead equipped with prosthetic devices in the form of metal hooks, testified that he requested petitioner's legal assistance in filing a motion to vacate, without offer or demand for money or other exchange, because of his physical handicaps and because he couldn't write and had only a 3rd grade education; that Hunter had previously sought legal assistance of Social Worker Bennett Wright; that, for that purpose, Hunter sent out 3 notes during October and November 1968 ("cop-outs") requesting an audience with Social Worker Wright, none of which were answered; that later Hunter asked Wright to assist him in filing a notice of appeal, and that such request did not produce any assistance from Wright, who also refused to permit Hunter to seek aid from petitioner; and that, ultimately, as a result of a charge of receipt of legal assistance from petitioner, Hunter was placed in solitary confinement and suffered the loss of 7 days' statutory good time.

Willard Lee Stufflebeam, Jr., a convict confined in the Medical Center, testified that, as a result of petitioner's legal assistance, rendered without charge, outstanding state warrants and orders for the production of his person had been withdrawn under the rationale of Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L. Ed.2d 607, in both Arkansas and Texas courts; that previously Stufflebeam had inquired of his caseworker, Miss Jones, how he might obtain legal aid and that she had advised him that the "only way" was for Stufflebeam to dictate the contents of the proposed motion to her; that Stufflebeam had sought an inter-

---

1. Petitioner also complained by implication that respondent's proper agent failed and refused to notarize a petition sought to be filed. The evidence shows that the officer who was to affix the *jurat* appeared in petitioner's ward on or about November 14, 1968, before the time when petitioner's legal materials had arrived from petitioner's regular ward assignment. See note 2, *infra*.

2. In his original petitions and supplemental pleadings, petitioner also alleged that he was denied access to his legal materials during his solitary confinement from November 13, 1968, and December 2, 1968. Petitioner agreed, however, that, after some delay, he was given his legal materials. According to petitioner's testimony on cross-examination, he received the materials on November 23, after a delay which respondent attributed to moving the materials from petitioner's ward. At the date of the hearing, petitioner agreed that he had full access to his legal materials.

view with Social Worker Wright in August 1968, but his request therefor had not been answered; and that ultimately the witness was placed in solitary confinement and suffered the possible loss of 7 days' good time (the actual forfeiture thereof being suspended for 90 days pending the witness' ward and work adjustment) for receiving the legal aid of petitioner, and was committed to solitary confinement for 3 days.

James W. Keith, another convict confined in the Medical Center, testified that he had, because of his physical disability (aching arms and legs) and lack of education, requested petitioner to write a letter complaining of inadequate medical treatment to Senator Long, dictated its contents to petitioner, and asked petitioner to sign it in his behalf; that he had not sought such aid previously from his social worker because he had never seen him and because he had no confidence that his social worker would aid him in writing a letter which requested relief against the Medical Center; that for petitioner's writing this letter, Keith was placed in solitary confinement and suffered the loss of 7 days' good time, unless satisfactory ward and work adjustment were made by the witness within the space of 90 days.

Harry H. Mayo, who had been sent to the Medical Center from Leavenworth penitentiary for the fitting of a prosthetic device, testified that petitioner had never threatened him in an effort to persuade him to file a civil suit; that he did discuss the filing of such a suit once with petitioner; and that he did not suspect Ayers of having started the fire which occurred on election night.

Marlin Eugene Wheeler, who was sentenced on a Dyer Act conviction and who suffered from paralyses, testified that, at his request, petitioner "wrote" a petition for him, about the 21st of October 1968 without charge, which complained of inadequate medical treatment, and which, at the date of the hearing, was still pending in Division 4 of this Court; and that, before requesting Ayers to prepare the petition, Wheeler had sought 3 interviews with Wright by written requests ("cop-outs") posted during the period of time lasting from September 25, 1968, to October 15, 1968, all of which had gone unanswered.

Social Worker Bennett Wright testified that he had been employed at the Medical Center for some twenty years; that he had been petitioner's social worker, except for the past 4–8 months, when Mr. Minchen was petitioner's social worker; that he was also the caseworker for inmates Stufflebeam, Hunter, Wheeler and Mayo; that he had always honored all requests for interview, though not always in the "degree of frequency" desired; that he had approximately 285 inmates to serve and the volume of requests averaged 10 to 15 a day; that therefore it often took 3 to 5 days after a request to have an interview; and that he was "not conscious" of not having honored any request for interview.[3]

David Langley Minchen, a graduate student in social work at the University of Missouri at Columbia, testified that he was presently petitioner's social worker; that during petitioner's stay in solitary confinement, he received a letter from petitioner regarding a request to file a petition in the United States Supreme Court; that from November 13,

---

3. Social Worker Wright also related to the Court, upon its finding during the hearing that petitioner's proposed brief to the Eighth Circuit Court of Appeals should be typed by respondent according to the latter's applicable rules, that he would see that the brief was typed. Upon receipt of a letter from petitioner the day before the deadline for filing, however, this Court telephoned the Medical Center to find that the brief had not yet been typed and that Mr. Wright was reported to be on vacation. The brief was later reported by respondent to have been typed in time for filing, but only after the prompting of the Court's telephone call.

1968, to November 23, 1968, he had received no requests from petitioner to file petitions in any state or federal court;[4] that he had answered on November 14, 1968, a request for interview ("cop-out") made before petitioner's solitary confinement by informing petitioner that he "didn't handle legal or medical problems," though he would help petitioner all he could in any other way.

The evidence shows, and it is hereby found, that requests for interviews addressed by inmates to social workers at the Medical Center were sometimes answered untimely and sometimes not answered at all; further, that if such requests pertained to legal assistance, at most only minimal lay assistance was offered to be given, and usually none was given; that there was no other alternative means or methods of obtaining preliminary legal assistance at the Medical Center, though this Court often appointed counsel in meritorious cases after the filing of petitions or other requests with the court, when the prisoner requested such appointment, and often even in the absence of such request and in spite of the wishes of the prisoner. The program of student assistance offered by the University of Missouri at Kansas City Law School was not sufficient because of the distance of the law school from the Medical Center and a shortage of personnel.

It was therefore the conclusion of this Court that the writ of habeas corpus should be granted, that petitioner's good time should be restored of record, and that respondent should be in the future enjoined from enforcing the regulation against inmate legal assistance in the absence of a showing of a reasonable alternative which offered adequate preliminary legal assistance to Medical Center

inmates, all in accordance with the interlocutory order entered herein on March 24, 1969.

Respondent subsequently responded that petitioner's loss of statutory good time had been restored to him of record and that respondent had ceased and desisted from all present punishments and from the contemplation of any future punishments for violation of the regulation under present circumstances. Subsequently, on May 2, 1969, respondent additionally responded to the effect that John J. Kane, Esquire, of Springfield, Missouri, a member of the Bar of Missouri and of Greene County and of this Court, had been hired as a consultant to render preliminary legal assistance to inmates and convicts of the Medical Center; that he would probably average 12 hours per week in that endeavor, and would be available for the time required by the demands and needs of the inmates and convicts. Such a response is deemed by this Court to be a satisfactory statement that respondent had authorized expenses with the good faith intent to provide inmates and convicts with such preliminary legal assistance as maybe required and that said counsel had made arrangements to be present at the Medical Center at certain reasonable times and places. Therefore, the following findings are made:

(1) Petitioner suffered the loss of 93 days statutory good time and suffered other irremediable punishments for violating respondent's regulation against inmate legal assistance.

(2) Petitioner therefore is entitled to the restoration of his good time of record and the cessation of all other punishments in accordance with the rule of Johnson v. Avery, *supra*.

---

4. Petitioner states that he sent Mr. Minchen a letter dated November 19, 1968, and the file reflects a letter dated that date in which he advises Mr. Minchen that petitioner did not get out of solitary as he had anticipated earlier; that petitioner was a victim of "kangaroo" justice, had had a "phony" charge placed against him, and was in need of legal aid. Minchen testified that he placed the letter in the central file and, after a subsequent call out, he was planning to see petitioner, but that he was "not authorized to do anything about this sort of thing," but simply to guide and counsel.

(3) Petitioner's good time has been restored of record and petitioner has been accorded all other appropriate relief.

(4) The program of preliminary legal assistance being instituted at the Medical Center appears presently to be a reasonable alternative to inmate legal assistance within the terms of Johnson v. Avery, *supra,* and respondent will therefore not be permanently enjoined from the enforcement of its regulation against inmate legal assistance under such circumstances.

It is therefore

Ordered and adjudged that petitioner has been accorded the relief to which he is entitled under prior orders of this Court in this action and that respondent has now instituted a program of preliminary legal assistance which appears to be sufficient under presently-controlling law.