Lawrence H. MJOLSNESS, Petitioner,

v.

Dr. P. J. CICCONE, Director, United States Medical Center for Federal Prisoners, Springfield, Missouri, Respondent.

Civ. A. No. 17390–3.

United States District Court,
W. D. Missouri, W. D.

July 23, 1969.

Lawrence H. Mjolsness, pro se.

Frederick O. Griffin, Jr., Asst. U. S. Atty., Kansas City, Mo., for respondent.

### ORDER GRANTING PETITION FOR HABEAS CORPUS

BECKER, Chief Judge.

Petitioner, an unconvicted inmate confined in the United States Medical Center for Federal Prisoners, request leave to proceed in forma pauperis and seeks a federal writ of habeas corpus adjudicating his commitment to be invalid and relieving him of certain conditions of confinement which he alleges currently to be suffering. Leave to proceed in forma pauperis was granted by the show cause order entered herein on June 3, 1969.

Petitioner states that he was charged in the United States District Court for the District of Minnesota with failing to report to "Selective Service Board No. 47 for Induction" and was subsequently committed by that Court to the Medical Center on April 1, 1969, for observation under the provisions of Section 4244, Title 18, U.S.C.; that he did not appeal from or seek review of the order of commitment; and that he was represented by counsel at his "arraignment and hearing."

Petitioner states the following as grounds for his contention that his federal rights are being violated by his confinement at the Medical Center:

"(a) My commitment does not specify how long I am to be here for observation. It does not mention any period of time. This is unlawful because the time, place, manner, condition, and scope of the examination must be specified."

"(b) My commitment does not direct inquiry into all pertinent questions, i. e., insanity to commit a crime and competency to stand trial. Therefore, it is defective, null, and void. I was denied due process of law, justice, humanity, equality, and equal protection of the laws. I am twenty-one (21) years old, and I have no criminal record. I have never been arrested before. I have always kept a good job. My morals prohibit me from taking the life of another human being, and I realize that if it were not for

the Viet Nam conflict, Your Honor would also accept my said morals. Since I have been here I have grown stronger in my convictions. By no means am I un-patriotic (sic) nor do I belong to any organization. I am asking this Court to discharge me into the custody of the U. S. Marshall (sic) or Chief Probation Officer forthwith and with directions to take and carry me back to Minneapolis, Minnesota and there to release and set me at liberty.

"(c) On April 18, 1969, I was subjected to physical violence by guards here at the Federal Medical Center for having on my person legal material belonging to another patient. Hon. Judge John W. Oliver, this Court has been advised of the matter by many patients and Senator George McGovern is now investigating said brutality. This violates my rights to safety and security, and freedom from cruel and unusual punishment."

Petitioner states the following as facts supporting his contentions:

"On April 18, 1969, while coming out of the dining room with an envelope in my pocket containing legal material belonging to another patient, officer (sic) Douglas Rowan stopped and frisked me. Officer Rowan insulted me personally for having my shoe untied and pushed me up beside a wall. He confiscated said legal materials and later that day came to the laundry where I work. Again he manifested animosity and took me to "B" cell unit, which is solitary confinement. There he pushed and tried to trip me with his foot. Officer Rowan, who is known to be one of the most sadistic guards here, motioned to the guards in said solitary confinement who immediately attacked me physically and put me in a dungeon. Subsequently, a week later I was called out to the Captains (sic) Office and threatened with more physical violence. As I have said, Honorable Judge Oliver of this Court has been told all about this mat-

ter, and U. S. Senator George McGovern is investigating same."

Since the petition as described alleged one or more possible violations of petitioner's federally protected rights, the show cause order of this Court issued on June 3, 1969. Because the Court had previously been informally informed that the petitioner had been returned to the committing Court, the same order required respondent to explain why such transfer was accomplished without leave of this Court.

Respondent's response was timely filed on June 23, 1969. Respondent therein averred that petitioner had been committed to the Medical Center by the United States District Court for the District of Minnesota under Section 4244, Title 18, U.S.C., "for such period of time as was necessary to carry out the terms of the Court's Order"; that respondent subsequently advised the said committing Court by letter on May 22, 1969 "that the Section 4244 study had been completed and two copies of the report were forwarded to the committing court"; that "sometime during the morning of May 29, 1969 [the Assistant United States Attorney] received telephone confirmation from the Medical Center that it was the intent of the United States Marshal to call for petitioner to return to his committing court at 1 P.M. on that date"; that thereupon said Assistant United States Attorney informed the law clerk of this division of the contemplated transfer but "inadvertently neglected to state that such a move was contemplated by 1 P.M. on that date"; and that the "Medical Center authorities, having been advised that they would be contacted by the Assistant [United States Attorney] should it develop that petitioner's contemplated transfer would have to be cancelled, and not having been so contacted, proceeded with petitioner's contemplated transfer on schedule." Respondent further averred that petitioner was neither "subjected to cruel and unusual punishment" nor "to physical violence of the nature he alleges." In support of that

contention, respondent attached the Report of Adverse Behavior of the incident of April 18, 1969, complained of by petitioner. Therein, it was the statement of Officer Rowin (sic) that:

> "I stopped this inmate as he came out of the main dinning (sic) room and found in his possession a blue envelope containing a letter and legal information from inmate Maurietta P– 17898. When I asked this inmate his name he told me it was Tyler. After checking I found there was no one by the name and number he gave me. Knowing he lied to me I checke (sic) the laundry and found him. On the way to 10–B he started to make a move to get away from me and I took his shirt sleeve to stop him and start him in the right direction and he turned around and squared off as if to take a swing at me but did not go through with his intentions.

> "Letter and legal material attached."

Petitioner's version of the event was reported in the adverse behavior report as follows:

> "I just pulled my arm away. I wasn't going to hit him. I did pull away hard. I was just carrying the legal material for Maurietta to Tyler, who works with me. I gave him the wrong name because I was scared. I lied. I'm not tough. I don't want any trouble. I've learned my lesson."

■■ The averments of the response are thus sufficient to show that the order by which petitioner was committed to the Medical Center was not unlawfully vague.[1] Further, since petitioner has now been returned to the committing Court for the competency hearing, the contention is moot. Cf. Arco v. Ciccone (W.D.Mo.) 252 F.Supp. 347, affirmed (C.A. 8) 359 F.2d 796.

■ The averments are not sufficient, however, to compel the denial of the petition insofar as it alleges cruel and unusual punishment. The response does not deny petitioner's allegation that Officer Rowan pushed petitioner and tried to trip him, nor that the officers attacked him violently when he was placed in solitary confinement. Further, it is uncontroverted by the facts averred that petitioner was placed in solitary confinement and otherwise punished as a result of his having in his possession "a letter and legal information from inmate Maurietta." These events took place after the decision of the United States Supreme Court in Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed. 2d 718, permitting inmate legal assistance in the absence of a "reasonable alternative", and the order of this Court, dated March 14, 1969, in Ayers v. Ciccone (W.D.Mo.) 303 F.Supp. 637, applying those principles to the Medical Center. They also antedated this Court's final order in *Ayers*, dated June 26, 1969, whereby it was determined that the Medical Center would not be permanently enjoined from enforcing its policy statement prohibiting inmate legal assistance because of the meantime establishment of a "reasonable alternative".

---

1. The order reads in pertinent part:
 "IT IS HEREBY ORDERED that the above-named defendant be examined by a psychiatrist assigned to the Psychiatric Staff, Medical Center for Federal Prisoners, Springfield, Missouri, who shall report in writing to this Court.
 "Said report shall state whether the defendant is or is not presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly assist in his defense. Said report shall further state whether or not the defendant, if released, will probably endanger the safety of the officers, the property, or other interests of the United States.
 "IT IS FURTHER ORDERED that the defendant be committed to the Medical Center for Federal Prisoners at Springfield, Missouri, for such period of time as is necessary to carry out the terms of this order and that the costs and expenses of such an examination shall be provided for by the United States Marshal as provided by law."

It therefore appears that the allegations of petitioner were in this regard true and meritorious and that relief should be granted in cases in which such incidents are continuing or petitioner has suffered remediable punishment of record.

 It further appears that petitioner was transferred without leave of Court during the pendency of this petition. The fact that respondent may have relied on some misinformation inadvertently supplied Medical Center personnel by the Assistant United States Attorney does not excuse them from the duty to seek and obtain affirmative leave from this Court to transfer an inmate or convict who has a habeas corpus petition pending in this District. There is nothing to indicate that time was of the essence in returning petitioner to the committing Court. Respondent was therefore unjustified in proposing to transfer petitioner on short notice unless timely word was received from this Court. Further, the suddenness with which petitioner was transferred from the District was a disservice to the Medical Center in that it, perhaps needlessly and without basis, cast suspicion on the motives of its personnel in hastily transferring a petitioner during the pendency of an apparently meritorious habeas corpus petition.

Respondent is therefore again cautioned in respect to its practice of transferring petitioners in habeas corpus without leave of Court, and is informed that this Court will not permit the ends of justice to be defeated by such transfers. Continuance of this practice may result in contempt proceedings against those responsible therefor or participating therein.

For the foregoing reasons, it is

Ordered that the petition for habeas corpus be, and it is hereby, granted and the respondent is ordered to expunge and remove from petitioner's record all references to the alleged offense, without prejudice to any civil action which petitioner may have.