UNITED STATES of America ex rel.
Marion STEVENSON, Petitioner,

v.

Vincent R. MANCUSI, Warden of Attica
State Prison, Respondent.

UNITED STATES of America ex rel.
Stephen J. CARTER, Petitioner,

v.

Vincent R. MANCUSI, Warden of Attica
State Prison, Attica, New York,
Respondent.

Civ. 1969-242, Civ. 1969-372.

United States District Court,
W. D. New York.

April 20, 1971.

Marion Stevenson pro se.

Richard F. Griffin, Buffalo, N. Y., for petitioner Stephen J. Carter.

Louis J. Lefkowitz, Atty. Gen., State of New York (Richard R. Jenczka, Buffalo, N. Y., of counsel), for the respondent.

CURTIN, District Judge.

Marion Stevenson filed an application with this court pursuant to Title 42, United States Code, Section 1983. He was granted permission to proceed in forma pauperis pursuant to Title 28, United States Code, Section 1915, for the limited purpose of allowing the court to determine the sufficiency of his complaint. Stevenson alleged that, after legal papers belonging to him were found in the cell of another prisoner, he was disciplined by the forfeiture of two days of good time. Respondent claims Mr. Stevenson was punished for a violation of Rule 21 of the Inmates' Rule Book which provides:

> "Inmates are prohibited, except upon approval of the Warden, to assist other inmates in the preparation of legal papers."

This court, relying on Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), and Hatfield v. Bailleaux, 290 F.2d 632 (9th Cir. 1961), dismissed his complaint on the ground that "the state may impose reasonable restrictions upon prisoners in the use and handling of legal papers. Petitioner fails to allege facts sufficient to warrant relief."

Mr. Stevenson appealed to the United States Court of Appeals for the Second Circuit. The Court of Appeals remanded petitioner's application to this court with the direction "to hold a hearing as if the petition were a petition for the issuance of a writ of habeas corpus, and, if requested, for the assignment of counsel", and further ordered:

> "It is suggested that the People should be given an opportunity to submit a memorandum discussing the applicability of Johnson v. Avery, 393 U.S. 483 (1969)."

Stephen Carter filed a petition alleging that his Eighth Amendment rights were violated when he was reduced in "grade standing" and lost "good time" as a result of his advising and preparing petitions for fellow inmates. This court ordered the respondent to show cause why petitioner's complaint should not be filed pursuant to Title 28, United States Code, Section 1915. Richard F. Griffin, attorney, was assigned to represent each of the defendants. The petitioner, Marion Stevenson, expressly declined the offer of Mr. Griffin's assistance and continued to represent himself during these proceedings.

At the hearing, the court considered the testimony of Vincent R. Mancusi, Superintendent of Attica Correctional Facility, Emmett Cochrane, Chief Clerk of Attica, and petitioner, Marion Stevenson. The court also considered affidavits of Vincent Mancusi, Manuel T. Murcia, counsel to the Commission of Corrections, Leon J. Vincent, Deputy Warden of Attica, Bruce K. Carpenter, at one time an attorney employed by the Legal Aid Bureau of Buffalo, New York, and also a letter from Nathaniel A. Barrell, Executive Attorney of the Legal Aid Bureau, Buffalo. During the hearing, the parties submitted in evidence relevant prison regulations and memoranda concerning the policy of the Department of Corrections governing legal aid to prisoners.

In answer to the court's demand for information about what steps were taken at Attica to implement Johnson v. Avery, *supra,* the state filed an affidavit of Mr. Mancusi which in part read:

"* * * [T]he above named petitioner is, and has been, allowed if he wishes, to contact the Legal Aid Bureau, the American Civil Liberties Union, and the various law schools and law research agencies on the outside and he also may make use of this institution's law library which has a more than adequate supply of the various law books."

Manuel T. Murcia, counsel to the Commissioner of Corrections, filed an affidavit listing a summary of the legal facilities and agencies available to inmates:

"1. Inmates have access to law books and legal periodicals available in the institution library.

2. Inmates may purchase, possess and own their law books and legal periodicals.

3. Inmates have access to the courts for free copies of court decisions.

4. Inmates have access to the State Law Library (Department of Education) in Albany, New York, for free copies of court decisions.

5. Inmates may retain their own counsel.

6. Inmates may communicate with any court, Judge, government official, Bar Association, Legal Aid Society, Public Defender, court-assigned counsel, law professors and law school students.

7. An illiterate and physically handicapped inmate may request legal assistance from the institution authorities and will be provided with such assistance.

8. A pilot program has been initiated in the Auburn Correctional Institution under Professor Gray Thoron, former Dean of Cornell Law School, to provide senior law students for interviewing inmates in the institution concerning their legal problems relating to their conviction and sentence. The students under the direction of law professors will prepare legal papers in those cases warranting court action."

In addition, a memorandum of Deputy Commissioner John R. Kane, of November 24, 1969, was offered in evidence by the respondent to show what was done to render assistance to inmates. This memorandum in part read:

"Federal court orders have mandated (Johnson v. Avery) that prisoners may not be prevented from offering and giving legal assistance to other inmates. So far this department has successfully answered this problem in that we contend that our inmates have channels other than a fellow inmate

from whom to solicit legal aid. This includes the Legal Aid Society, public defenders, senior law students, and other approved sources of assistance."

Commissioner Kane also directed that senior law students working under direction should be allowed to visit inmates.

At the hearing, Superintendent Mancusi was asked:

"Q. What provision or programs do you have to make available legal assistance to inmates with respect to writs or legal procedures?

A. He has the right to hire an attorney; contact Legal Aid or A. C.L.U. or law schools; right to use the law library; free notary service, personal owned law books. He can take a correspondence course in law school. That I believe is substantially the rights."

Mr. Mancusi was questioned relative to the criteria, if any, which are applied under Rule 21 in granting approval of a request by one inmate to help another:

"Q. Do you have any written rules or criteria which you use as a basis to permit one inmate to help another?

A. Yes, sir, a man must be illiterate.

Q. The man must be illiterate, is that right?

A. If a man makes a request for legal assistance and I find he tests below the fifth grade, I make arrangements for an inmate to aid him."

The tests referred to are psychological tests administered when an inmate is received at the institution. If the inmate is not illiterate within the Warden's definition, he must prepare his own petition.

Mr. Mancusi testified further:

"Q. Who made the decision to cut off at the fifth grade level?

A. This is department directive as to functional illiteracy."

Later in the testimony, Mr. Mancusi was asked:

"Q. Just to conclude and go back to your earlier testimony, as I understand it, the only situation where you will permit one inmate to help another in the preparation of legal papers is where the inmate making the request is illiterate and the criteria that you use for this is that he tests at the fifth grade or lower level, is that correct?

A. That is correct."

He said that the men talked about legal problems in the recreation yards— "weekends he can discuss it for six hours with somebody—as long as there weren't legal papers changing hands." These conversations between prisoners about legal matters are not forbidden. Evidently no disruption of good order is caused by men discussing legal problems during recreation time. Mr. Mancusi explained that the purpose of Rule 21 is to prevent the practice of law by persons not admitted to the Bar and to prevent the extortion of fees by prisoners for the preparation of papers.

Mr. Mancusi testified that the mere fact of possession of legal papers of another prisoner was enough to constitute a violation.

Some idea of the problem of assistance can be obtained by considering that, as a rule, there are about 2,000 inmates at Attica. Of these, 350 to 400, or 20%, are classified as functionally illiterate. Many inmates have difficulty in reading, writing, and understanding the English language.

An analysis of the types of actions which were commenced and papers notarized at Attica for the calendar year 1969 shows that there were 207 writs of coram nobis, 345 writs of habeas corpus, 143 sets of papers starting Article 78 proceedings, 55 applications for certiorari to the United States Supreme Court, 86 motions for resentence, 168 notices of appeal, 57 appeal briefs, 171 applications for permission to proceed in forma

·pauperis, 235 notices of motion, 334 affidavits and motions to reargue, and 212 miscellaneous papers handled.

In this court alone, the following petitions for habeas corpus and civil rights complaints were filed in the last few years:

| FISCAL YEAR | HABEAS CORPUS | CIVIL RIGHTS |
|---|---|---|
| 1966 | 119 | 32 |
| 1967 | 169 | 23 |
| 1968 | 105 | 30 |
| 1969 | 137 | 32 |
| 1970 | 143 | 44 |
| 1971 to Mar. 1971 | 88 | 42 |

Almost all of the above were filed by Attica inmates.

Many of these applications are confusing, verbose, repetitious, and obviously based upon a misinterpretation of some law or regulation. In many cases, it is necessary to dismiss petitions because state remedies have not been exhausted, or because of some other defect in the application. After that, petitioner quite often files again, some times on the same mistaken theory.

The evidence reveals that, in many cases, the opportunity for an inmate at Attica to receive legal assistance is seriously hampered. The prison, located in Wyoming County, a rural area in Western New York, is about an hour and a half travel time from the nearest large population center of Buffalo. There are few attorneys in the immediate vicinity of the prison and no organized program with any Bar Association, law school, or other agency to provide aid in a regular manner. The Legal Aid Bureau of Buffalo represents inmates in state habeas corpus proceedings already pending before the Wyoming County Court, and appeals from judgments in those cases. However, because of a lack of funds and a shortage of manpower, the Bureau is not able to furnish any additional assistance. The Bureau only handles applications upon assignment after they are filed. It does not counsel inmates before applications are made.

In federal petitions, a number of attorneys in the Buffalo area are willing to take assignments. However, because of the distance to Attica and the press of private business, they only participate after petitions are filed and, as a rule, are not available to counsel or assist inmates who desire to discuss a possible legal problem.

In Johnson v. Avery, *supra,* the Supreme Court held that the State of Tennessee was barred from enforcing a regulation which prohibited inmates of the penitentiary from giving legal assistance to one another where there was no alternative program of legal assistance available. The court stated:

"[T]he initial burden of presenting a claim to post-conviction relief usually rests upon the indigent prisoner himself with such help as he can obtain within the prison walls or the prison system. In the case of all except those who are able to help themselves— usually a few old hands or exceptionally gifted prisoners—the prisoner is, in effect, denied access to the courts unless such help is available." Johnson v. Avery, *supra,* at 488, 89 S.Ct. at 750.

The court went on to say:

"[U]nless and until the State provides some reasonable alternative to assist inmates in the preparation of petitions for post-conviction relief, it may not validly enforce a regulation such as that here in issue, barring inmates from furnishing such assistance to other prisoners." Johnson v. Avery, *supra,* at 490, 89 S.Ct. at 751.

In Wainwright v. Coonts, 409 F.2d 1337 (5th Cir. 1969), that court, in holding invalid a regulation almost identical to Inmates Rule 21, stated:

" * * * Concededly, illiterates are likely to be among those most in need of help, and the exception made by the Florida regulation in such instances is desirable. But we cannot agree that illiterates, either total or func-

tional, are the only inmates in need of assistance in the preparation of petitions for post-conviction relief. It is apparent, and we will not belabor the point, that a high percentage of inmates who are literate but 'whose educational attainments are slight, and whose intelligence is limited.' Johnson v. Avery, *supra*, at 487, 89 S.Ct. at 750, may be entirely incapable of pursuing their post-conviction remedies without the assistance of a third person."

In Nolan v. Scafati, 430 F.2d 548, 551 (1st Cir. 1970, that court said:

"Johnson v. Avery clearly stands for the general proposition that an inmate's right of access to the court involves a corollary right to obtain some assistance in preparing his communication with the court."

Recently, this circuit, in Sostre v. McGinnis, 442 F.2d 178, decided February 24, 1971, provided:

"Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), instructs that states must permit prisoners to help fellow inmates prepare habeas corpus petitions, subject to reasonable regulation, absent a sufficient showing by the state that through some other means it provides prisoners with an adequate substitute for the 'jailhouse lawyer.' Cf. Ex parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941) (state may not require that habeas petition be approved by a corrections official to see that it was 'properly drawn'); Gilmore v. Lynch, 319 F.Supp. 105 (N. D.Calif., filed May 28, 1970) (3-judge court) (woefully inadequate prison law library *held* unlawfully restricts prisoners' access to courts)."

The evidence in this case demonstrates that the availability of legal assistance falls short of the standard required by Johnson v. Avery, *supra*.

At Attica, in the normal course, an inmate who has a legal problem has no one to discuss it with except another inmate. Legal Aid, A.C.L.U., and other legal help at Attica is limited by man-power and is concerned mainly with petitions already filed. Perhaps some prisoners receive assistance by writing to Bar Associations or private attorneys, but there is no evidence in the case about the results of these contacts. The state provides no assistance for the preparation of complaints in habeas corpus or civil rights cases, nor does it provide legal counseling to those inmates who have other legal problems.

The pilot program begun at Auburn Correctional Facility is a worthwhile first step, but there is no similar program in effect or in planning at Attica. Prisoners are allowed to have private law books, there are law books available in the prison law library, and copies of decisions are made available to inmates interested in them. But these facilities are of no use to most inmates. They are of no use whatever to the illiterate and of little help to the remainder of Attica inmates.

The court, in Johnson v. Avery, *supra*, indicated that it is not necessary in many cases to have a detailed knowledge of the law. However, it certainly is necessary to be able to set forth the facts in a clear and complete manner. As has been already indicated, many petitions received are most confusing and difficult to understand. Unfortunately, some inmates' good claims have been delayed or even defeated because the facts were not properly presented.

However, the most important part of a legal assistance plan is not the law books or library, or the availability of decisions, but the opportunity to consult with an attorney, or at least a person of good common sense and experience who can, in a straightforward and complete manner, set forth the inmate's claim in understandable fashion. Because the present scheme does not reach the standard required by Johnson v. Avery, *supra*, the Department of Corrections must permit one inmate to assist another under reasonable regulation.

There is no question that reasonable restriction may be placed upon any inmate assistance program.

"[T]he State may impose reasonable restrictions and restraints upon the acknowledged propensity of prisoners to abuse both the giving and the seeking of assistance in the preparation of applications for relief: for example, by limitations on the time and location of such activities and the imposition of punishment for the giving or receipt of consideration in connection with such activities." Johnson v. Avery, *supra,* at 490, 89 S.Ct. at 751.

In Sostre v. McGinnis, *supra,* 442 F.2d 201, the Second Circuit approved a rule forbidding prisoners from sharing law books, one requiring a prisoner to get a book from the official rather than another inmate, and another prohibiting one inmate from keeping in his cell legal materials belonging to another. See also U. S. ex rel. Scott v. LaVallee, 316 F. Supp. 1407 (S.D.N.Y.1969).

If the Commissioner fears that an extensive program of fellow inmate assistance would lead to abuse, there are many alternative solutions. Several states supply trained attorneys, paid from public funds, who are able to consult with prisoners regarding habeas corpus petitions. See Johnson v. Avery, *supra,* at 723, 89 S.Ct. 747. In Ayers v. Ciccone, 303 F.Supp. 637 (W.D.Mo.1969), the *Johnson* standard was satisfied when a private attorney was hired to render counseling on a part-time basis. A program at Attica with the University of Buffalo Law School may be possible.

Neither Stevenson nor his fellow inmate asked permission for giving assistance. In the ordinary case, this must be done. But, under the policy in effect at that time—that a person scoring above the fifth grade level would be left to his own devices, permission would not have been granted.

In answer to Mr. Stevenson's claim that he lost two days' good time because legal papers belonging to him were found in the cell of a fellow prisoner, the state claims that petitioner was reported for allowing another inmate to do his legal work, that he lost no good time, and that he suffered a reprimand only. The state of the evidence is confusing, since it appears that the papers in question were the work product of Mr. Stevenson. If in fact he lost two days' good time, it shall be restored.

Mr. Carter was released on parole on June 15, 1970. Although notice was sent to him setting a time for the hearing, he did not attend or get in touch with his attorney. His actions for restoration of good time and for damage are dismissed as moot and for failure of proof.

The policy in force, prohibiting an inmate from assisting another if the second tests over the fifth grade level, is unreasonable. It violates the standard of assistance demanded by Johnson v. Avery, *supra.* Any inmate desirous of legal assistance should have an opportunity to receive it under reasonable rules.

The respondent is enjoined from enforcing Rule 21 unless an alternative plan acceptable under Johnson v. Avery, *supra,* is put in force and promulgated.

The court expresses its appreciation for the assistance of Richard F. Griffin, Esq. in the presentation of this matter.

This decision shall constitute the judgment of the court.